In re WORKERS' COMPENSATION.

Civ. No. 4–85–1166.

United States District Court,
D. Minnesota,
Fourth Division.

March 20, 1990.

ROSENBAUM, District Judge.

Plaintiffs move for class certification pursuant to Rule 23, Federal Rules of Civil Procedure (Fed.R.Civ.P.). Plaintiffs seek to certify a class of:

All employers (excluding defendants and co-conspirators, including any subsidiary or affiliate thereof) with places of business within the State of Minnesota required by Minnesota law to carry workers' compensation insurance coverage, who between June 8, 1979, and April 25, 1983 purchased policies of workers compensation insurance from one or more of the named defendants, including any subsidiary or affiliate thereof, or from one or more other member insurance companies of the Workers Compensation Insurers' Rating Association of Minnesota.

For the reasons set forth herein, plaintiffs' motion is granted.

## I. *Background*

The facts of this case, at this pretrial stage, were set out by this Court and the court of appeals. They are reported in this Court's order, dated July 28, 1987, and at 867 F.2d 1552, respectively. A very brief review is warranted, however, for purposes of this motion.

Prior to June 7, 1979, Minnesota Statutes, § 79.21, required that the rates for Minnesota's workers' compensation insurance be approved by the Insurance Commission of Minnesota. On June 7, 1979, Minnesota's legislature amended § 79.21 to permit insurers to "write insurance at rates that are lower than the rates approved by the commissioner...." Minnesota Statutes, § 79.21. Plaintiffs argue that, notwithstanding the statutory amendment, defendants conspired, through the Workers' Compensation Insurance Rating Association of Minnesota (WCIRAM), to continue to charge inflated rates by price fixing and enforced their agreement through a group boycott from June 7, 1979, to and until April 25, 1983.

The putative plaintiffs purchased workers' compensation insurance from the named defendants and approximately 250 other insurers between June 7, 1979, and April 25, 1983. Plaintiffs instituted this action in 1983, alleging price fixing and boycott in violation of the Sherman Act, 15 U.S.C. § 1, and the Minnesota Antitrust Law of 1971, Minnesota Statutes, §§ 325D.49–.66. This Court granted summary judgment in defendants' favor on plaintiffs' federal claims on July 28, 1987, and declined to accept the remainder of the case under pendent jurisdiction. *In re*

*Workers' Compensation Insurance Antitrust Litigation,* Civil No. 4–85–1166, mem. op. at 23 (July 28, 1987).

This Court's order was reversed by the United States Court of Appeals for the Eighth Circuit. The Eighth Circuit held that the evidence offered in opposition to the motion for summary judgment "support[ed] an inference of an agreement to boycott, coerce or intimidate companies into adherence to a fixed price." *In re Workers' Compensation Insurance Antitrust Litigation,* 867 F.2d 1552, 1566 (8th Cir), *cert. denied,* —— U.S. ——, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989). The court of appeals then directed this Court to maintain pendant jurisdiction over plaintiffs' state law claims. *Id.,* at 1567–68. And so the matter is before this Court.

In reply to plaintiffs' present motion for class certification, defendants zealously urge that a class action is a most undesirable, unmanageable, and particularly unjust method of resolving these issues. They claim each plaintiff is so unique that no commonality of interest or claims is possible. Defendants then argue the incomprehensibly complex nature of the insurance business, lecturing the Court regarding the intricacies of insurers' risks and resulting decision-making policies.

Defendants highlight three factors which they allege distinguish this antitrust certification motion from the myriad others with which courts have somehow managed. First, defendants assert plaintiffs will have to prove that each of the 250 insurance companies joined in and adhered to the conspiratorial boycott, thus creating numerous individual questions of impact and injury, none of which predominate.

Second, defendants contend the method of calculating insurance prices is not conducive to class action treatment because the allegedly fixed rates constitute only one of a number of factors utilized to set insurance prices. Defendants argue each defendant will have calculated prices in a different manner using the challenged rate in varying degrees. Defendants, here, emphasize the complexity of computing workers' compensation insurance rates. Defen-

dants allege pricing policies vary so widely from employer to employer that no consistent method could possibly be derived by which all of the defendants' actions could be judged in a class proceeding.

Third, defendants note that differences between the various plaintiffs are also incorporated into insurance prices. This, defendants argue, destroys any typicality among the plaintiffs. In this regard, they note that employers are big and small and their employees either do, or do not, engage in high risk activities. Further, defendants suggest the existence of an incredible variety of workers' compensation plans, including some to employers which were so small that they did not purchase insurance under the rates specified by the Commissioner and others which purchased under an assigned risk program rather than the rate statute. Defendants finally, but emphatically, suggest that some employers purchased policies whose premiums were not impacted by any allegedly illegal activity. Defendants ask the Court to consider:

1) employers who purchased multi-state and multi-line policies the premiums for which were not calculated using the Commissioner's rate;

2) employers who purchase policies based upon individual loss characteristics including retrospective rating plans as well as employers who were simply bad risks;

3) employers who purchased policies reflecting anticipated changes by the Minnesota legislature on Minnesota Statutes, § 79.23; and

4) employers who purchased policies in which they received other options which lowered their premiums.

These considerable discrepancies, argue defendants, make class certification under Rule 23 an unavailable option. In view of all of these concerns, defendants presumably suggest the courts would be best served by several hundred individual lawsuits against each of 250 or so putative defendants.

## II. *Analysis*

Plaintiffs' motion for class certification must be considered in light of the well established principles of Rule 23, Fed.R. Civ.P. Plaintiffs must first satisfy the four requirements of Rule 23(a):

1) the class is so numerous that joinder of all members is impracticable;

2) there are questions of law or fact common to the class;

3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a)(1)–(4), Fed.R.Civ.P.; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 162, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732 (1974). These are commonly referred to as the tests of "numerosity, commonality, typicality, and adequacy."

In addition, plaintiffs must demonstrate that their action is encompassed within one of the three categories listed in Rule 23(b). *Eisen*, 417 U.S. at 162, 94 S.Ct. at 2145. Plaintiffs must demonstrate that:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Rule 23(b)(1)–(3), Fed.R.Civ.P. It is apparent that plaintiffs' claims fall most naturally within the ambit of subsection 23(b)(3) which requires that common questions predominate and that the class action format be superior to other means of adjudication.

■ Before addressing any of the Rule 23 criteria, however, the Court must find that a precisely defined class exists and that the class representatives fall within this class. *John Does 1–100 v. Boyd*, 613 F.Supp. 1514, 1527 (D.Minn.1985); *Dirks v. Clayton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125, 130–31 (D.Minn.1985). This test is an implicit requirement of Rule 23. *Dirks*, 105 F.R.D. at 130.

■ Plaintiffs carry the burden of proof regarding Rule 23's requirements. *Smith v. Merchants & Farmers Bank*, 574 F.2d 982, 983 (8th Cir.1978); *Kassover v. Computer Depot, Inc.*, 691 F.Supp. 1205, 1213 (D.Minn.1987). The Court may only certify the class if it is satisfied after a rigorous analysis that all of the prerequisites are met. *Bishop v. Committee on Professional Ethics*, 686 F.2d 1278, 1287 (8th Cir.1982). Approval or denial of certification, however, ultimately is vested in the discretion of the Court. *Gilbert v. City of Little Rock, Arkansas*, 722 F.2d 1390, 1399 (8th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984); *In re Control Data Corp. Securities Litigation*, 116 F.R.D. 216, 219 (D.Minn.1986).

■ In considering each requirement of Rule 23, the Court is mindful of the accepted rationale underlying class actions. It is a necessary vehicle for the vindication of small claims, particularly when those claims involve complex litigation. *Kassover*, 691 F.Supp. at 1213. Rule 23 is an "instrument of convenience," but should not put an "unjustified burden upon judicial resources." *Id.* When there is a question as to whether certification is appropriate, the Court should give the benefit of the doubt to approving the class. *In re Control Data Corp.*, 116 F.R.D. at 219.

■ Having set forth these implicit and explicit criteria, the Court considers each of the Rule 23 requirements.[1]

### A. *Implicit Criteria—Defined Class*

The implicit criterion, subsumed within Rule 23, is the existence of a defined class of which the named representatives are a part. *John Does 1–100*, 613 F.Supp. at 1527. The Court holds that such a class is sufficiently defined in this case. Class members will include only those employers who purchased workers' compensation insurance—a fact easily determined. According to their pleadings, the named representatives fall within this class, and each purchased workers' compensation insurance between 1979 and 1983 from one of the defendants. This implicit requirement is satisfied. The Court then turns to the requirements of Rule 23(a), all of which must be met.

### B. *Rule 23(a) Requirements*
#### 1. *Rule 23(a)(1)—Numerosity*

■ Rule 23(a)(1) precludes any class action unless "the class is so numerous that joinder of all members is impracticable." There is, however, no absolute number which satisfies the "numerosity" requirement. The Eighth Circuit has not established any rigid rules regarding the necessary size of a class. *Boyd v. Ozark Airlines, Inc.*, 568 F.2d 50, 54 (8th Cir.1977). Beyond mere numbers, a court may look to the type of action, the size of individual claims, the inconvenience of conducting individual lawsuits, and any other factors pertaining to the propriety of joining all proposed class members. *Paxton v. Union National Bank*, 688 F.2d 552, 559–60 (8th Cir.1982). Courts have approved classes as small as 250–300, *Bowman v. National Football League*, 402 F.Supp. 754, 756 (D.Minn.1975), and as large as a nationwide

class. *Califano v. Yamasaki*, 442 U.S. 682, 703, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979). If class treatment is found to be inappropriate, the Court can invoke its management discretion pursuant to Rule 23(c)(1), (c)(4), and (d). *General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *State of Minnesota v. United States Steel Corp.*, 44 F.R.D. 559, 566 (D.Minn.1968).

Plaintiffs have asserted no specific numbers, but contemplate a plaintiff class in excess of 10,000. Defendants do not seriously challenge this figure or that it would satisfy this requirement. The Court, therefore, concludes defendants have met their burden of establishing numerosity pursuant to Rule 23(a)(1).

#### 2. *Rule 23(a)(2)—Commonality*

■ Rule 23(a)(2) requires that plaintiffs show "there are questions of law or fact common to the class." Yet, not every question of law or fact must be common to every member of the class. *Paxton*, 688 F.2d at 561; *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir.1974). The requirement is met if the questions linking the class members are "substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton*, 688 F.2d at 561 (*quoting American Finance Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D.Md.1974)). Identical questions are not necessary and factual discrepancies are not fatal to certification. *Dirks*, 105 F.R.D. at 131. Rule 23(a)(2) may be satisfied if common questions of liability are present despite individual differences in damages.[2] *Jenson v. Continental Financial Corp.*, 404 F.Supp. 806, 810 (D.Minn.1975). *See Gentry v. C & D Oil Co.*, 102 F.R.D. 490, 493 (W.D.Ark. 1984).

To prevail on their claims, plaintiffs must prove a violation of the antitrust laws, di-

---

**1.** The Court considers plaintiffs' federal and state antitrust claims together for purposes of this motion. *See generally Midwest Communications, Inc. v. Minnesota Twins*, 779 F.2d 444, 452–53 (8th Cir.1985), *cert. denied,* 476 U.S. 1163, 106 S.Ct. 2289, 90 L.Ed.2d 730 (1986); *Hoffman v. Delta Dental Plan of Minnesota*, 517 F.Supp. 564, 573 (D.Minn.1981).

**2.** Rule 23(a)(2) is not the same requirement as that contemplated in Rule 23(b)(3) which requires that common questions predominate. For purposes of Rule 23(a)(2), plaintiffs need only show that common questions exist. *See In re South Central States Bakery Products Antitrust Litigation*, 86 F.R.D. 407, 415 (M.D.La. 1980).

rect injury resulting from the violation (impact), and damages. *Windham v. American Brands, Inc.*, 565 F.2d 59, 65 (4th Cir.1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978); *In re Wirebound Boxes Antitrust Litigation*, 128 F.R.D. 268, 271 (D.Minn.1989). "Antitrust, price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 335 (E.D.Pa.1976). *See Fisher Bros. v. Mueller Brass Co.*, 102 F.R.D. 570, 574–75 (E.D.Pa.1984); *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (E.D.N.Y.1982). Numerous courts have approved class treatment where the putative class alleges a price fixing conspiracy.[3] *See Rios v. Marshall*, 100 F.R.D. 395, 405 (S.D.N.Y.1983); *United Nat'l Records, Inc. v. MCA, Inc.*, 99 F.R.D. 178, 180 (N.D.Ill.1983); *Davis v. Northside Realty Assoc. Inc.*, 95 F.R.D. 39, 43 (N.D.Ga. 1982); *In re South Central States Bakery Products Antitrust Litigation*, 86 F.R.D. 407, 415 (M.D.La.1980); *In re Sugar Industry*, 73 F.R.D. at 335–36; *PDQ of Miami v. Nissan Motor Corp. in U.S.A.*, 61 F.R.D. 372, 375 (S.D.Fla.1973), *aff'd*, 577 F.2d 910 (5th Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979); *State of Minnesota*, 44 F.R.D. at 566. "If there be no proof of a conspiracy," no plaintiffs recover under any theory of the pleadings. *State of Minnesota*, 44 F.R.D. at 566.

Plaintiffs correctly note that both this Court and the court of appeals have treated plaintiffs' claims and the insurance companies' defenses identically to this point. The question of liability, moreover, turns on the existence or non-existence of a conspiracy to boycott. While there are certainly factual differences among plaintiffs' claims, the allegations need not be identical to comport with Rule 23(a)(2). The law requires only that there be questions common to the class.

Again, defendants only indirectly dispute the existence of common questions of law and fact. Instead, they focus on whether these common questions predominate within the contemplation of Rule 23(b)(3). The Court, therefore, concludes plaintiffs have met their burden pursuant to Rule 23(a)(2).

### 3. *Rule 23(a)(3)—Typicality*

Rule 23(a)(3) requires "the claims or defenses of the representative parties ... [be] typical of the claims or defenses of the class." Typicality has independent significance: it requires a demonstration that members of the class have the same or similar grievances as plaintiffs. *Tate v. Weyerhauser Co.*, 723 F.2d 598, 608 (8th Cir.1983), *cert. denied*, 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984). The typicality requirement is satisfied "when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members." *Dirks*, 105 F.R.D. at 132–33 (*citing Paxton*, 688 F.2d at 561–62). Plaintiffs' liability theory and type of relief must be co-extensive with those of the class members. *In re Wirebound Boxes*, 128 F.R.D. at 270; *In re South Central States Bakery Products*, 86 F.R.D. at 415; *State of Minnesota*, 44 F.R.D. at 566. As such, the representatives' claims must adequately protect the interests of the class and there must be no antagonistic interests between the representatives and the class.[4] *In re Wirebound Boxes*, 128 F.R.D. at 270;

---

**3.** Generally, the "[t]actical problems inherent in arriving at a satisfactory calculation of damages must be considered, and given their appropriate weight, elsewhere in Rule 23." *PDQ of Miami v. Nissan Motor Corp. in USA*, 61 F.R.D. 372, 375 (S.D.Fla.1973), *aff'd*, 577 F.2d 910 (5th Cir. 1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979).

**4.** Rule 23(a)(3) has been interpreted to mean the representative's allegation must be "squarely aligned in interest" with the purported class, *Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. 24, 42 (N.D.Cal.1977), and that the representative's interest must be "sufficiently parallel to the interests of the other class members to assure a vigorous representation of the class." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir.), *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977). Put another way, "in the course of proving [their] own claim [the representatives] must also prove the claims of the other members of the class." *Amswiss Int'l Corp. v. Heublein, Inc.*, 69 F.R.D. 663, 667 (N.D. Ga.1975).

*In re Control Data Corp.,* 116 F.R.D. at 220. Perfect identity of claims, however, is not required, *In re Wirebound Boxes,* 128 F.R.D. at 270; *In re South Central States Bakery Products,* 86 F.R.D. at 415, and factual differences between plaintiffs are not fatal. *See e.g. Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977).

An antitrust price fixing case generally will involve claims sufficiently similar to satisfy Rule 23(a)(3). If the representatives must prove "a conspiracy, its effectuation, and damages therefrom—precisely what the absentees must prove to recover—the representative claims can hardly be considered atypical." *State of Minnesota,* 44 F.R.D. at 567. *See In re Wirebound Boxes,* 128 F.R.D. at 270; *Butt v. Allegheny Pepsi–Cola Bottling Co.,* 116 F.R.D. 486, 488 (E.D.Va.1987).

> The fact that the purchases were not made from all of the defendants, or that all of the methods through which the conspiracy was allegedly effected were not utilized against the named plaintiffs, is not dispositive of their ability to represent the class.

*Sheller Realty Corp. v. Allied Maintenance Corp.,* 75 F.R.D. 34, 39 (S.D.N.Y. 1977), *appeal dismissed,* 574 F.2d 656 (2d Cir.1978). Nor will differing damages, resulting from varied methods of procuring and purchasing the product, defeat satisfaction of Rule 23(a)(3).

Defendants argue plaintiffs have failed on typicality. They contend the six named plaintiffs' insurance plans differ in form and their contacts with defendants are so varied that they cannot be considered typical. Defendants stress that the Court must examine the factual circumstances of each employer. Defendants ultimately claim that the impact of any alleged conspiracy on the named representatives is too speculative. The upshot of their argument is that if any conspiracy had existed its effect would be unique to each plaintiff.

The Court disagrees. It is true that the six putative class plaintiffs differ in their present makeup and their past transactions. And the types of insurance they purchased were admittedly varied. But in its essence, plaintiffs claim that the insurance companies combined to fix prices of workers' compensation insurance rates at a rate higher than would have existed in the absence of the illegal conspiracy. The elements of these claims are similar to those of any other price fixing cases: proof of the existence, scope, and effect of the alleged conspiracy. Those same elements would have to be shown by any party so aggrieved, even if each plaintiff's claim were taken individually.

> This Court has spoken on this very issue:
>
> Defendants argue that the plaintiffs' claims are neither typical nor co-extensive in that all plaintiffs have sustained substantially different damages requiring extensive proof because of diverse methods of procuring and purchasing fabricated steel products. But all claims in the classes herein will require proof of a conspiracy, plus a showing of price fixing, allocation of business or other noncompetitive activity, as well as evidence of purchases at allegedly inflated prices. Although each plaintiff will have to prove a precise purchase or purchases to show damages, the former two elements of proof will redound to the benefit of the entire class of claimants, and the court therefore is disposed to reject the defendants' theory. While a disparity of damages may be argued to go to the question of "predominance," such disparate proof fails to make the representatives' claims atypical.... Since the representative parties need prove a conspiracy, its effectuation, and damages therefrom—precisely what the absentees must prove to recover—the representative claims can hardly be considered atypical. Moreover, if the "typical" requirement of 23(a)(3) is thought to mean only a lack of adversity between the representatives and the absentee plaintiffs, there is no showing of adverse interests in these actions which would militate against class action treatment.

*State of Minnesota,* 44 F.R.D. at 566–67 (footnotes and citations omitted). As such:

[t]he mere fact that all of the methods through which the alleged conspiracy was effected were not used with respect to [the named representatives], or the fact that [they] did not purchase from all defendants, does not determine that the claim of [the named plaintiffs] lack[ ] typicality under Rule 23(a)(3).

*In re South Central States Bakery Products,* 86 F.R.D. at 417.

### 4. *Rule 23(a)(4)—Adequacy*

■ Rule 23(a)(4) demands that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation is measured by two factors: (1) plaintiffs' counsel must be competent to pursue this action, and (2) the representatives must not have interests which are antagonistic to those of the class. *Jenson,* 404 F.Supp. at 811. Rule 23(a)(4) asks whether the class representatives will vigorously prosecute the interests of the class.[5] *Paxton,* 688 F.2d at 562–63; *Dirks,* 105 F.R.D. at 133. Rule 23(a)(4) also requires that:

the representative display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation.

*Gentry,* 102 F.R.D. at 494–95. The question is: Will the representative parties put up a genuine fight? *In re Endotronics,* Civil No. 4–87–130, mem. op. at 11, 1988 WL 9250 (D.Minn. Jan. 28, 1988).

■ The second of Rule 23(a)(4)'s requirements—lack of antagonism—is similar to Rule 23(a)(3)'s typicality test. *In re Wirebound Boxes,* 128 F.R.D. at 270. In an antitrust action, therefore, the plaintiffs need not "have purchased from all of the defendants or ... have been adversely affected by all of the means and methods by which the alleged conspiracy was implemented." *In re South Central Bakery Products,* 86 F.R.D. at 418. Moreover, the "fact that some representatives face addi-

tional defenses does not defeat their ability adequately to represent the class." *In re Wirebound Boxes,* 128 F.R.D. at 271.

■ An additional factor considered by some courts is the financial wherewithal available to, and provided by, the class representatives. *See e.g. In re South Central Bakery Products,* 86 F.R.D. at 418–419. Consideration of this factor, however, should be limited. *See Dirks,* 105 F.R.D. at 134. The focus of the financial issue should be on the class representatives' ability to finance the "cost of notice to absent class members and to retain vigorous and effective counsel." *In re South Central Bakery Products,* 86 F.R.D. at 418; *Butt,* 116 F.R.D. at 489.

Defendants suggest that plaintiffs fail to satisfy Rule 23(a)(4) in three ways. First, defendants claim the interests of the named plaintiffs are co-extensive neither among themselves nor with those of the proposed class respecting particular plan purchases and the unique characteristics of each insured. Second, defendants contend the named plaintiffs lack the financial strength to insure fair and adequate representation. Third, defendants claim that discovery has revealed that at least three of the named plaintiffs have no knowledge of the facts upon which this litigation is based beyond any explanations given to them by counsel.[6]

■ The Court rejects defendants' first argument that the putative plaintiffs' interests are not aligned with those of the class. Earlier in this opinion, the Court held that the claims of the named plaintiffs and the proposed class satisfied Rule 23(a)(3) in that the plaintiffs' claims were typical. As noted, Rule 23(a)(4) is related to Rule 23(a)(3). The Court notes the class representatives here are a " 'part of the class and possess the same interest and [have] suffer[ed] the same injury as the class members.' " *Bishop,* 686 F.2d at 1289 (*quoting East Texas Motor Freight Sys-*

---

**5.** This factor is of "critical importance." *Bishop v. Committee on Professional Ethics,* 686 F.2d 1278, 1288 (8th Cir.1982).

**6.** As a preliminary matter, no challenge has been raised regarding the competency or expertise of plaintiffs' counsel. Their expertise and competence in class action representation is not in question.

*tem, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977)). The Court further finds that there has been no showing whatsoever that plaintiffs' individual interests are antagonistic to one another.[7] As a general rule, "only a conflict which goes to the very subject matter of the litigation will defeat a party's claim to representative status." *Jenson,* 404 F.Supp. at 811. No such conflict exists here. Defendants' argument regarding the different types of purchases and insurance policies goes to typicality—which the Court has held satisfied—and the predominance of common questions of law and fact pursuant to Rule 23(b)(3). It is not sufficient to disqualify the class representatives pursuant to Rule 23(a)(4).

Defendants' second argument, touching the named plaintiffs' knowledge, is also unpersuasive. "The representative need not have, and often in an anti-trust action will not have, personal knowledge of the facts needed to make out a prima facie case." *Gentry,* 102 F.R.D. at 495. As such, the depth of a named representative's knowledge is irrelevant. *See e.g. Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 371–74, 86 S.Ct. 845, 850–51, 15 L.Ed.2d 807 (1966). As a practical matter, the named plaintiffs surely are aware of the factual and procedural circumstances of their case. The case has been hard litigated, for nearly seven years, both in this Court and in the Eighth Circuit. The Court finds that, for purposes of this motion, plaintiffs are sufficiently aware of the status of the litigation. *See Gentry,* 102 F.R.D. at 495.

Defendants' final argument questioning plaintiffs' financial resources is baseless. Plaintiffs' counsel have found the means to prosecute this case for seven years. Plaintiffs' counsel's assurances satisfy the Court that the financial requirements which may be imposed upon the class representatives will be satisfied adequately. The Court finds this sufficient to meet the requisites of 23(a)(4).

7. Naked allegations of antagonism are insufficient to undermine certification pursuant to Rule 23(a)(4). *In re South Central States Bakery*

### C. *Rule 23(b) Requirements*

Rule 23(b)(3) requires that "questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

#### 1. *Predominance*

There are no bright lines for determining whether common questions predominate. *Dirks,* 105 F.R.D. at 132, 136. An issue will meet the predominance "standard when there exists generalized evidence that proves or disproves [an] element on a simultaneous, class-wide basis. Such proof obviates the need to examine each class member's individual position." *In re Industrial Gas,* 100 F.R.D. 280, 288 (D.C.Ill.1983). The total amount of time spent on a common issue compared to time spent on individual issues is immaterial. *State of Minnesota,* 44 F.R.D. at 568. The mere existence of individual questions such as damages does not automatically preclude satisfaction of the predominance requirement, *Rios,* 100 F.R.D. at 408; *In re Alcoholic Beverages,* 95 F.R.D. at 327; *Davis,* 95 F.R.D. at 48; *In re South Central States Bakery Products,* 86 F.R.D. at 419, so long as there is some common proof to adequately demonstrate some damage to each plaintiff. *In re Wirebound Boxes,* 128 F.R.D. at 271; *In re South Central Bakery Products,* 86 F.R.D. at 421. Individualized, separate trials—mini-trials—on individual issues of fact are not a bar to the use of the class action procedure. *In re Industrial Gas,* 100 F.R.D. at 290.

These common principles have been applied with particular force in the antitrust setting. As discussed, plaintiffs must prove three elements to succeed: (1) violation of the antitrust law; (2) direct injury (or impact) from the violation; and (3) damages suffered by the plaintiffs. *In re Wirebound Boxes,* 128 F.R.D. at 271; *In re Industrial Gas,* 100 F.R.D. at 288; *In re South Central States Bakery Products,* 86 F.R.D. at 419. Non-uniformity of the

*Products Antitrust Litigation,* 86 F.R.D. 407, 418 (M.D.La.1980).

prices at which plaintiffs purchased their goods is not fatal to certification. *In re South Central Bakery Products*, 86 F.R.D. at 421. As long as the existence of a conspiracy is the overriding question, then the class has met its predominance requirement. *In re Wirebound Boxes*, 128 F.R.D. at 271; *Gentry*, 102 F.R.D. at 495; *In re Alcoholic Beverages*, 95 F.R.D. at 326; *In re South Central States Bakery Products*, 86 F.R.D. at 419–22; *State of Minnesota*, 44 F.R.D. at 568, 571. To prove injury, plaintiffs need only demonstrate they have suffered some damage from the unlawful conspiracy. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n. 9, 89 S.Ct. 1562, 1571 n. 9, 23 L.Ed.2d 129 n. 9 (1969). Such a showing may be made on a class basis if the evidence demonstrates that the conspiracy succeeded in increasing prices above the competitive level. *In re Wirebound Boxes*, 128 F.R.D. at 271.

Defendants steadfastly assert that common questions do not predominate. They first suggest that plaintiffs must present individualized proof regarding an "agreement to boycott" by all insurers of WCI-RAM, including those not named as defendants. They next claim that each individual plaintiff must prove that the boycott caused its own insurance company to use the highest allowable rate. Defendants would analogize this case to those involving dealers who claim vertical price-fixing by their manufacturer. Defendants cite a number of cases for the proposition that class certification should be denied under these circumstances. *See e.g. Mekani v. Miller Brewing Co.*, 93 F.R.D. 506, 513 (E.D.Mich.1982). Defendants summarize their argument as follows:

> In short, this case will necessarily require a factual inquiry concerning whether (and when) each of the 250–plus insurers licensed to write workers' compensation insurance in Minnesota between 1979 and 1983 succumbed to the alleged agreement to boycott, and whether (and when) each of these insurers otherwise joined the alleged conspiracy to fix rates. Demonstrating that Insurer A succumbed or otherwise participated in the alleged price-fixing conspiracy does not show that Insurer B—or any of the 250–plus other insurers—did so. Therefore an employer customer of Insurer B cannot recover without showing that Insurer B succumbed to the group boycott or otherwise participated in the alleged price-fixing conspiracy.

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, p. 30 (footnote omitted).

Defendants then focus upon the individual employers and their separate insurance purchases. They state that the degree of each insurer's reliance on the claimed conspiracy and the various types of policies sold affect individual damages. Defendants suggest this case is similar to class actions involving "goods or services that are not homogenous or fungible and are priced in a variety of ways."

As is expected, defendants reject plaintiffs' assurances that a statistical formula exists to determine individual impact and damages. Instead, defendants argue no such formula has been proffered and none can be created under these circumstances.

Defendants' first response ultimately suggests that the case is too complex, involving as it does some 250 insurers. Their argument proves too little. Complexity does not mean the issue of conspiracy does not predominate. Defendants' argument, on analysis, simply goes to the issue of manageability, which will be considered below. The existence of agreements among individual defendants and difficulties in proof will not defeat predominance.

The differences between individual plaintiffs, however, pose more subtle problems. First, defendants contend not all of the insurers supplying workers' compensation insurance used the rate set by the Commissioner. Second, even in cases where the rate was utilized, the rate may have been only one of numerous factors constituting the ultimate premium. These questions ultimately ask, "Who was a member of the conspiracy?" Plaintiffs, of course, bear the burden of demonstrating participation in the conspiracy to boycott. But proof of

which insurers sold boycott rate based insurance does not strike the Court as dauntingly difficult. If "yes," the insurer is in; if "no," it will be dismissed, as would any non-liable party.

■ The multiple factors which affect rates may cause difficulties, but are equally unavailing to defendants. As discussed, the defendants will be only those insurers who sold rate based insurance and joined the conspiracy. This argument actually relates to damages rather than impact or injury. *In re Wirebound Boxes*, 128 F.R.D. at 271. "Common proof of impact is possible even though prices" are individually negotiated. *Id.* "Proof of impact typically follows proof of a price-fixing conspiracy where the defendants are shown to have sufficient market power." *Id.* at 271–72; *Gentry*, 102 F.R.D. at 495. Although damage amounts may vary among plaintiffs, this fact alone, particularly in antitrust actions, will not defeat certification.

Plaintiffs offer expert affidavits suggesting ease of calculation. At this chronologically late, but litigation-early stage, the Court suggests that such a calculation is probably not as simple as plaintiffs claim. On the other hand this determination does not seem as incomprehensibly difficult as defendants threaten. Individual questions of damages are often a problem encountered in an antitrust action and are rarely a barrier to certification. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir.1977).

Separate mini-trials, a special master, later stratification of the class, or a magistrate may be available to resolve such issues. In this action plaintiffs must demonstrate a conspiracy and its impact, not necessarily on an individual basis; those questions predominate over any secondary and individual questions of damages.

### 2. *Superiority*

In considering whether a class action is the superior method of proceeding, a court should consider:

(A) the interest of members of the class in individually controlling the prosecution for defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(3)(A)–(D), Fed.R.Civ.P. Manageability is a real issue.

But defendants' parade of horrors is chimerical. They know, as does this Court, that this case can be managed. It does not take a battalion of rocket scientists to handle a large case—although each side clearly have talented and competent counsel. If the plaintiffs' claims are substantiated, a question as to which the Court presently has no opinion, the class action mechanism is clearly the most efficient means of resolving the many claims which may be asserted. The Court is confident that stated classes or subclasses will make the case comfortably—if not easily—manageable. If the case were not handled as a class, thousands of small claims would be either brought or unjustly abandoned. The first possibility would be a flood of cases, the second would involve individual claims abandoned because of cost.

■ The Court is mindful that dismissal for management reasons is never favored. *In re South Central States Bakery Products*, 86 F.R.D. at 423. The vehicle of class action is meant to permit plaintiffs with small claims and little money to pursue a claim otherwise unavailable. *In re Endotronics*, mem. op. at 16; *State of Minnesota*, 44 F.R.D. at 570. A contrary rule would "essentially preclude class treatment whenever separate issues had to be tried." *Simer v. Rios*, 661 F.2d 655, 672 n. 29 (7th Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982). If, as this case develops, class treatment proves to be inappropriate, the Court may exercise its discretionary powers pursuant to Rule 23(c) and adjust the action accordingly.

Based on the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED that:

Plaintiffs' motion for class certification of a class consisting of:

all employers (excluding defendants and co-conspirators, including any subsidiary or affiliate thereof) with places of business within the State of Minnesota required by Minnesota law to carry workers' compensation insurance coverage, who between June 8, 1979, and April 25, 1983, purchased policies of workers compensation insurance from one or more of the named defendants, including any subsidiary or affiliate thereof, or from one or more other member insurance companies of the Workers Compensation Insurers' Rating Association of Minnesota is granted.