In re **MONOSODIUM GLUTAMATE ANTITRUST LITIGATION**

**Civ. No. 00–MDL–1328 PAM.**

United States District Court,
D. Minnesota.

June 8, 2001.

Richard A. Lockridge, W. Joseph Bruckner, Heidi M. Drewes-Silton, Lockridge Grindal Nauen, Minneapolis, MN, Samuel D. Heins, Daniel E. Gustafson, Heins Mills & Olson, Minneapolis, MN, Steven A. Asher, Barrack Rodos & Bacine, Philadelphia, PA, Steven A. Kanner, Much Shelist Freed Denenberg Ament & Eiger, Chicago, IL, Howard J. Sedran, Levin Fishbein Sedran & Berman, Philadelphia, PA, Bruce L. Simon, Cotchett Pitre & Simon, Burlingame, CA, Steven O. Sidener, Gold Bennett Cera & Sidener, San Francisco, CA, Guido Saveri, Saveri & Saveri Inc., San Francisco, CA, Jared B. Stamell, Stamell Tabacco & Scharger, New York City, Roberta D. Liebenberg, Fine Kaplan & Black, Philadelphia, PA, Vincent J. Esades, Heins Mills & Olson, Minneapolis, MN, Ann D. White, Mager & White, Jenkintown, PA, for plaintiffs.

Michael Anthony Lindsay, Dorsey & Whitney, Minneapolis, MN, Joseph T. Dixon, Jr., Henson & Efron, Minneapolis, MN, Alan Hall Maclin, W. Patrick Judge, Briggs &

Morgan, St. Paul, MN, Paul J. Vincenti, Richard B. Pacella, Vincenti & Vincenti, New York City, David B. Reece, Barry F. McNeil, Ronald W. Breaux, Haynes & Boone, Dallas, TX, Jon S. Swierzewski, Dionne M. Benson, Larkin Hoffman Daly & Lindgren, Bloomington, MN, Nicholas J. Boyle, Williams & Connelly, Washington, DC, Michael R. Lazerwitz, David S. Snyder, Cleary Gottlieb Steen & Hamilton, Washington, DC, William L. Greene, David R. Crosby, Leonard Street and Deinard, Minneapolis, MN, A. Paul Victor, Weil Gotshal & Manges, New York City, Christina A. Sessa, Squadron Ellenoff Plesent & Sheinfeld, New York City, for defendants.

John W. Borg, Edina, MN, pro se.

### MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the Court on Plaintiffs' Motion for Class Certification. For the reasons that follow, the Court grants the Motion.

### BACKGROUND

This litigation consists of nine individual lawsuits consolidated and transferred to this Court on March 2, 2000, by the Judicial Panel on Multidistrict Litigation. Plaintiffs in these lawsuits are purchasers of monosodium glutamate ("MSG") and other flavor enhancers, known as nucleotides. They allege that Defendants conspired to raise, fix, and maintain prices in the MSG and nucleotides market, and to allocate customers among themselves, in violation of the Sherman Act, 15 U.S.C. § 1. They now seek to certify a class consisting of:

> All persons who purchased MSG or nucleotides (IMP, GMP, or I + G, a combination of IMP and GMP), directly from any of the Defendants or their affiliates or co-conspirators in the United States during the period January 1, 1990 through November 1, 1999. Excluded from the Class are the Defendants, their respective parents, subsidiaries and affiliates, and federal, state and local government entities and political subdivisions, including possessions, commonwealths, and territories.

(Pls.' Am. Proposed Order at 1.) They also ask the Court to name Diversified Foods and Seasonings, Inc., M. Phil Yen, Inc., Felbro Food Products, Inc., and Y. Hata & Co., Ltd. as named class representatives (the "named Plaintiffs").[1] Defendants Ajinomoto Company, Inc., Ajinomoto U.S.A., Inc., Archer Daniels Midlands Company, Daesang America, Inc., Takeda Chemical Industries, Ltd., and Takeda Vitamin & Food USA, Inc.[2] oppose the Motion.

### DISCUSSION

#### A. Standard of Review

Rule 23 of the Federal Rules of Civil Procedures governs the certification of a class, and Plaintiffs have the burden to establish that they can satisfy all of Rule 23's requirements. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). When evaluating whether Plaintiffs have met the Rule's requirements, the Court must accept as true the substantive allegations in the Complaint. *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 688 (D.Minn. 1995) (Kyle, J.). Given "the important role class actions play in the private enforcement of antitrust actions, courts resolve doubts in these actions in favor of certifying the class." *Id.* at 688–89.

#### B. Rule 23(a)

Plaintiffs must first establish that they meet the four prerequisites of Rule 23(a). If Plaintiffs meet all of 23(a)'s prerequisites, they must then satisfy the requirements under one of the subsections of 23(b), which will be discussed in more detail below. Under

---

1. In their initial memorandum, Plaintiffs also sought to name First Spice Mixing Co., Inc., as a named Plaintiff. They subsequently withdrew that request, however. (Defs.' Opp'n Mem. at 3 n. 2.)

2. There are several other Defendants in this action, including Cheil Jedang Corporation, Miwon Company, Ltd., Kyowa Hakko Kogyo, and Tung

Hai Fermentation Industrial Corporation. Service of the Third Amended Complaint has not yet been effected on Cheil Jedang Corporation (a South Korean company) or Tung Hai Fermentation Industrial Corporation (a Taiwanese company), and Kyowa Hakko Kogyo has not yet answered the Complaint.

Rule 23(a), to be certified as a class action, Plaintiffs must show that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Defendants do not dispute that Plaintiffs meet the first three requirements of 23(a). Defendants argues only that Plaintiffs are not adequate representatives.

## 1. *Numerosity*

■■■ A class may not be certified unless the proposed class is so large that joinder of all class members would be "impracticable." Fed.R.Civ.P. 23(a)(1). There is no specific number of class members that will automatically warrant class certification. *In re Workers' Compensation*, 130 F.R.D. 99, 104 (D.Minn.1990) (Rosenbaum, J.). Here, the Third Amended Complaint claims that the class might number in the thousands of members. (Third Am. Compl. ¶ 36.) Plaintiffs' expert witness, Dr. John C. Beyer, averred that the class includes more than 750 members. (Beyer Aff. ¶ 5.) In addition, proposed class members are located throughout the United States, making joinder impracticable. The Court finds that Plaintiffs have satisfied the numerosity requirement.

## 2. *Commonality*

■■ Rule 23 does not require that all questions of law and fact are common to every member of the proposed class. Rather, the Rule requires only that common questions exist. The presence of differing legal inquiries and factual discrepancies will not preclude class certification.[3] *Dirks v. Clayton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125, 131 (D.Minn.1985) (MacLaughlin, J.). Common questions are often found in antitrust price-fixing conspiracy cases, because, "by their nature, [these cases] deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Sugar Indus. Antitrust Litig.*, 73 F.R.D. 322, 335 (E.D.Pa. 1976).

■■ In this case, the overriding questions will be whether the Defendants conspired to fix the price of MSG and nucleotides and, if so, the damages that inured to the class as a result. These questions are common to all members of the class, because, if there is no proof of a conspiracy, no Plaintiffs will recover. *Minnesota v. United States Steel Corp.*, 44 F.R.D. 559, 566 (D.Minn.1968) (Neville, J.). Plaintiffs have succeeded in showing that common questions exist for the purposes of class certification.

## 3. *Typicality*

■■ In order to show that the claims of the named Plaintiffs are typical of the claims of the class, the named Plaintiffs must demonstrate that they have the same or similar grievances as the members of the class. *In re Workers' Compensation*, 130 F.R.D. at 105; *Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 608 (8th Cir.1983). Perfect identity of claims is not required. *In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 268, 270 (D.Minn.1989) (Murphy, J.) A "strong similarity" between the legal theories of Plaintiffs and those of the class members will satisfy the typicality requirement. *In re Potash*, 159 F.R.D. at 690.

This inquiry is made more difficult by decisions interpreting the typicality requirement to necessitate an examination of whether the representatives will adequately protect the interests of the class, and whether there are antagonistic interests between the representatives and the class. *Id.; In re Wirebound Boxes*, 128 F.R.D. at 270. These are the same questions the Court must address when determining whether Plaintiffs have satisfied the adequacy requirements of Rule 23(a)(4). *In re Potash*, 159 F.R.D. at 690 n. 8 (citing, *inter alia, Gen. Tel. Co.*, 457 U.S. at 157 n.

---

**3.** The commonality inquiry is different from the question whether common questions predominate, which will be addressed in the Rule 23(b) analysis, *infra*.

13, 102 S.Ct. 2364). Here, because Defendants do not argue that Plaintiffs fail to meet the typicality requirement but do assert that Plaintiffs are not adequate representatives, the adequacy analysis is more appropriately addressed under Rule 23(a)(4), below.

■ "An antitrust price fixing case generally will involve claims sufficiently similar to satisfy Rule 23(a)(3)'s typicality requirement." *In re Workers' Compensation*, 130 F.R.D. at 106. As noted in the commonality analysis above, the named Plaintiffs must prove a conspiracy among Defendants and that they were damaged thereby. This is also what absentee class members would have to prove to recover. *United States Steel*, 44 F.R.D. at 567. Therefore, "the representative claims can hardly be considered atypical." *Id.* Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).

### 4. *Adequacy*

■ Plaintiffs must next demonstrate that they "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To do so, they must show that: (1) their counsel is competent to pursue the action; and (2) their interests are not antagonistic to the interests of the class. *In re Workers' Compensation*, 130 F.R.D. at 107. Defendants claim that Plaintiffs have failed to demonstrate that they are adequate class representatives, because Plaintiffs do not know enough about the litigation and have in effect ceded control of the litigation to their counsel.[4] According to Defendants, representatives of the named Plaintiffs could not answer basic questions about the progress of the litigation or the allegations in the Complaint, and thus should not be deemed adequate to protect the interests of the class.

Defendants seek to require too much of the named Plaintiffs in this action. This is an antitrust case, and antitrust is an area of the law that even lawyers often find confusing and difficult to understand. It is not surprising, then, that lay persons such as named Plaintiffs do not grasp the finer points of the allegations in their lawsuits. In an antitrust action, the class representatives

"need not have, and often ... will not have, personal knowledge of the facts needed to make out a prima facie case." *Gentry v. C & D Oil Co.*, 102 F.R.D. 490, 495 (W.D.Ark. 1984). Indeed, "the depth of a named representative's knowledge is irrelevant." *In re Workers' Compensation*, 130 F.R.D. at 108. In this case, it is clear from a full reading of the relevant section of the deposition transcripts that the named representatives possess enough knowledge to assist their able counsel in prosecuting this action. That is all that is required.

It is likewise clear that the interests of the named representatives are not antagonistic to those of the class. As discussed above with respect to commonality, if the common claims of an antitrust conspiracy are not proven, none of the class members, including the named Plaintiffs, will recover. Defendants have not argued that there are conflicts between the named Plaintiffs and the class, and the Court has found none. Plaintiffs satisfy the adequacy requirement, and, as such, have established all of the requirements of Rule 23(a).

### C. Rule 23(b)

■ In pertinent part, Rule 23(b) provides that

[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: ... (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3). Defendants do not contest Plaintiffs' assertion that a class action is the superior means to litigate the dispute. However, Defendants contend that common questions do not predominate, making class treatment inappropriate.

In order to prove their case, Plaintiffs must demonstrate that Defendants engaged in a price-fixing conspiracy, that this conspiracy had an impact on Plaintiffs, and that they

---

4. Defendants have not challenged the competency of that counsel, however.

suffered damages. *In re Potash*, 159 F.R.D. at 693. Defendants' contentions with respect to the lack of predominance center on the second element of Plaintiffs' case, the proof of impact. According to Defendants, Plaintiffs have failed to show that common issues will prevail on this element because the conclusions of Plaintiffs' expert witness in this regard are fundamentally flawed. Defendants urge the Court to reject the opinions of Dr. Beyer, and to conclude that the class should not be certified because common questions do not predominate.

Defendants attack several of Dr. Beyer's conclusions. Specifically, Defendants allege that Dr. Beyer does not base his opinions regarding market share, geographic overlap, and pricing behavior on sufficient data. Interestingly, Defendants do not bring forward evidence from the record or their own expert witness to show, for instance, that Dr. Beyer's conclusion that Defendants control ninety-nine percent of the United States market for MSG and nucleotides is incorrect. Rather, Defendants merely state that Dr. Beyer did not examine sufficient data to make this conclusion. Once Plaintiffs have made a threshold showing, however, the Court must accept this showing unless it is patently insufficient. *See In re Potash*, 159 F.R.D. at 688. Defendants' mere averments that Plaintiffs' showing is not based on sufficient evidence does not persuade the Court that Plaintiffs have failed to meet their burden.

Moreover, Defendants' complaint about the data on which Dr. Beyer relied is not well taken. Defendants argue that Dr. Beyer's data set was faulty because it did not include data from Cheil Jedang Corporation, Kyowa Hakko Kogyo, and Tung Hai Fermentation Industrial Corporation. Defendants ignore the fact that, because of difficulties in effecting service in Korea and Taiwan, Cheil Jedang Corporation and Tung Hai Fermentation Industrial Corporation have not yet been served with the Third Amended Complaint, and therefore have not participated in any discovery. Similarly, Kyowa Hakko Kogyo has not yet answered the Third Amended Complaint, and also has not participated in discovery. Thus, the data on which Dr. Beyer based his opinions is necessarily limited to the data provided by the currently participating Defendants.

Defendants also claim that Dr. Beyer's conclusions as to product fungibility are not supported by the evidence. However, his conclusions are supported by his interpretation and analysis of the evidence. Defendants' argument on this point goes to the weight to be accorded Dr. Beyer's testimony at trial, and not to its admissibility. Defendants will be free to refute Dr. Beyer's conclusions at trial, but at this stage, the Court will not exclude those conclusions.

Underlying Defendants' arguments is their contention that Dr. Beyer's testimony should be excluded pursuant to the rationale of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *Daubert* provides for the exclusion of expert witness testimony if the methodology underlying that testimony is unreliable, i.e., if there are not "good grounds" for the witness's opinions. *Daubert*, 509 U.S. at 589–90, 113 S.Ct. 2786. The Court notes again that, although Defendants assert Dr. Beyer's methodology is fatally flawed, Defendants have not offered the testimony of their own expert witness to show why Dr. Beyer's methodology is as bad as they insist it is. Even assuming that there are problems with Dr. Beyer's methodology, however, Defendants' attack on that methodology is premature. The *Daubert* inquiry requires a more searching analysis than is appropriate at this preliminary stage. *See In re Screws Antitrust Litig.*, 91 F.R.D. 52, 57 (D.Mass.1981) (holding that court must consider only whether plaintiffs have shown "that what proof they offer will be sufficiently generalized"); *In re Catfish Antitrust Litig.*, 826 F.Supp. 1019, 1042 (N.D.Miss.1993) ("Whether or not plaintiffs' expert is correct in his assessment of common impact/injury is for the trier of fact to decide, at the proper time."). On a motion for class certification, the Court cannot, and indeed should not, engage in the analysis Defendants suggest.

After careful review of Dr. Beyer's affidavit, the Court is convinced that common questions on the issue of impact will predominate in this litigation. Whether or not Dr. Beyer's methodology and conclusions will

withstand the scrutiny of the *Daubert* inquiry is an issue that must be left to another day. The Court also concludes that the class mechanism is the superior method of resolving the controversy. As a class action, this case will be manageable. As hundreds of individual antitrust actions, the litigation would not be manageable.

## CONCLUSION

Plaintiffs have demonstrated that they meet the requirements of Rule 23(a) and Rule 23(b)(3). Therefore, Plaintiffs are entitled to maintain this action as a class action.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Class Certification (Clerk Doc. No. 74) is **GRANTED**.

2. The Court certifies the following class:

   All persons who purchased MSG or nucleotides (IMP, GMP, or I + G, a combination of IMP and GMP), directly from any of the Defendants or their affiliates or co-conspirators in the United States during the period January 1, 1990 through November 1, 1999. Excluded from the Class are the Defendants, their respective parents, subsidiaries and affiliates, and federal, state and local government entities and political subdivisions, including possessions, commonwealths, and territories.

3. The Court designates Diversified Foods and Seasonings, Inc., M. Phil Yen, Inc., Felbro Food Products, Inc., and Y. Hata & Co., Ltd. as class representatives.