**MIDWESTERN MACHINERY, sued as "Midwestern Machinery Co., Inc.," Brian F. Gagan, Sharon Tolbert Glover, Charles M. Koosmann, Laurie L. Laner, Jack Reuler, Nigel Linden, Daniel L. Jongeling, Industrial Rubber Products, Inc., and Daniel O. Burkes, Plaintiffs,**

v.

**NORTHWEST AIRLINES, INC., Defendant.**

**Civ. No. 97–1438 (DWF/AJB).**

United States District Court, D. Minnesota.

Jan. 18, 2001.

Richard Ihrig, Lindquist & Vennum, Seymour J. Mansfield, Mansfield, Tanick & Cohen, James W. Rude, Felhaber, Larson, Fenlon & Vogt, Lewis A. Remele, Jr., Bassford, Lockhart, Truesdell & Briggs, Rodney A. Wilson, Wilson Law Office, Brooks F. Poley, Winthrop & Weinstine, Minneapolis, MN, for plaintiffs.

Thomas W. Tinkham, Peter W. Carter, Dorsey & Whitney, Minneapolis, MN, Parker C. Folse, III, Seattle, WA, for defendant.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on September 15, 2000, pursuant to Plaintiffs' Motion for Class Certification, Plaintiffs' Motion to Strike the Affidavit of Mary Kay Kane, and Defendant's Motion to Strike a Portion of the Expert Report of Dr. John C. Beyer. For the reasons set forth below, Plaintiffs' and Defendant's respective Motions to Strike are denied, and Plaintiffs' Motion for Class Certification is granted in part.

### Background

In January 1986, Northwest Airlines and Republic Airlines announced a merger. In August 1986, the two airlines merged with the approval of the U.S. Department of Transportation (DOT), despite opposition by the Antitrust Division of the U.S. Department of Justice (DOJ). DOJ argued that "the combination of two directly competing air carriers at a single hub would have substantial anti-competitive effects."

The Administrative Law Judge (ALJ) recommended and the DOT decided, however, to approve the acquisition based on the "theory of contestable markets," which posited the likelihood or threat of new entry as sufficient "discipline" for the Northwest/Republic market power. The DOT did not, however, grant antitrust immunity as the airlines requested, thus allowing for Plaintiffs' current suit.

At the time of the merger, both Northwest and Republic were headquartered in Minneapolis–St. Paul. They were, respectively, the eighth and ninth largest airlines in the United States and the first and second largest and principal competitors at Minneapolis–St. Paul Airport (MSP). In 1985, Northwest serviced forty-three percent of MSP passengers. In 1987, the year following the merger, Northwest accounted for seventy-nine percent of passenger service at MSP, and it has retained its position as the dominant carrier at MSP to date.

In their complaint, Plaintiffs assert that, prior to the merger, customers benefitted from competition between the two airlines by way of "quality ... service" at "relatively low prices." Plaintiffs allege, however, that, subsequent to the merger, Northwest has dominated air travel into and out of MSP, resulting in "a substantial lessening of competition in violation of § 7 of the Clayton Act, 15 U.S.C. § 18" and a systemic practice of over-

charging customers.[1] Plaintiffs seek to certify a class defined as:

> All persons who purchased tickets for scheduled passenger air service from defendant Northwest Airlines, Inc., which involved travel within the Relevant Markets during the period from June 16, 1993 to the present date. Excluded from the class are defendant Northwest Airlines, Inc., its parents, subsidiaries, and affiliates, and their employees and immediate family members.

"Relevant markets" is defined by the Plaintiffs as "the MSP Hub Market, the Individual City–Pair Markets, and the Certain Connecting City Pair Markets." The "MSP Hub Market" consists of non-stop and certain one-stop passenger flights within the other two identified market types. "Individual City Pair Markets" are comprised of non-stop flights between MSP and certain other cities, such as MSP–Boston and Boston–MSP. "Certain Connecting City Pair Markets" refer to connections through MSP to a city for which there is no alternative non-stop service, such as Chicago–MSP–Duluth. It is these markets that Plaintiffs have identified as having been affected by Northwest's monopoly.

## Discussion

### 1. Motions to Strike

#### a. *In General*

Two issues presently before the Court involve the testimony of an expert for each party. Both experts present testimony relevant to the qualification of the current suit for class certification. The Court will address the parties' respective motions to strike the other's expert affidavit/report before reaching the issue of class certification because it finds the testimonial evidence at issue relevant to its determination of whether class certification should be granted.

The admissibility of expert testimony, whether in the form of an affidavit or a report, is governed in part by Rules 702 and 704 of the Federal Rules of Evidence. Rule 702 provides a standard of "helpfulness" which requires that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Rule 704 provides that "testimony ... otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

The scope of the Rules has been illustrated by the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). *Daubert* established factors to be considered when evaluating the principles and methodology of a scientific expert for validity, relevance, and ultimately, admissibility, and it held that general acceptance within the field was not a necessary precondition for admissibility. *Kumho Tire* extended the holding of *Daubert* to apply to non-scientific experts qualified by their experience, education, skill, or expertise in other fields.

The application of the *Daubert* test, however, is somewhat limited at the stage of class

---

1. The Clayton Act states in pertinent part that:

No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

Northwest alleges a "shift" in Plaintiffs' antitrust theory that it claims should impact the Court's application of the Clayton Act. It notes that Plaintiffs adopted a "holding and use of assets" theory in order to comply with the 8th Circuit's recent holding in *Midwestern Machinery, Inc. v. Northwest Airlines, Inc.*, 167 F.3d 439 (8th Cir.1999), yet it claims that Plaintiffs are actually arguing an incompatible theory of anti-competitive effects due to the elimination of Republic as a competitor. Northwest relies on *Midwestern Machinery* and *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir.2000), as support for its argument. The Court declines to address Defendant's argument at this time because the Court finds that it does not impact the issue of whether class certification should be granted. Neither side, however, is precluded from raising the issue at a later and appropriate time.

certification. *Daubert* is helpful to the extent that it can assist the Court in preventing the entrance of methodology so apparently flawed. *See In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68, 76–77 (E.D.N.Y.2000); *In re Potash,* 159 F.R.D. at 695–98 (finding that plaintiffs are required only to make a "threshold showing" of whether proof will be "sufficiently generalized"). It would be inappropriate, however, for a court to look beyond the methodology and critique the prospective results of its application to a complete set of data. *Id.* A party and its experts should not be expected to have fully evaluated all data at the preliminary stage of class certification.

b. *Defendant's Motion to Strike a Portion of the Expert Report of Dr. John C. Beyer*

■ Plaintiffs have offered the expert report of Dr. John C. Beyer, an economist, to present a common method of proving damages to class members. Defendant moves the Court to strike Dr. Beyer's report to the extent that it relates to class-wide impact. The Court declines to do so.

Dr. Beyer holds several graduate degrees in economics, including a Ph.D. from the Fletcher School of Law and Diplomacy. He is currently the president of Nathan Associates, an economic consulting firm based in Arlington, Virginia. Dr. Beyer has 30 years of experience in applied micro-economics analysis in the United States, including service as an expert witness in antitrust matters such as *In re Domestic Air Transportation Antitrust Litigation,* 137 F.R.D. 677 (N.D.Ga.1991); *In re Catfish Antitrust Litigation,* 826 F.Supp. 1019 (N.D.Miss.1993), and *In re Flat Glass Antitrust Litigation,* 191 F.R.D. 472 (W.D.Pa.1999).

To compile his report, Dr. Beyer analyzed numerous Northwest documents and private and governmental reports relating to the airline business subsequent to deregulation in the 1970s. Dr. Beyer has concluded, and the reports consulted corroborate, that, since the merger: (1) MSP air travel has become more concentrated and Northwest's MSP market share has increased significantly; (2) MSP airfares and yields have increased since the merger; and (3) entry barriers to MSP are high. Plaintiffs and Dr. Beyer contend that the overall increase in fares impacts all MSP passengers, thus establishing class-wide impact.

As part of his method of proof, Dr. Beyer concludes that there is an identifiable and coherent structure to Northwest's fare pricing despite the potential availability of numerous prices for any given seat at any given time. He has based his analysis on the "Y-fare," which is the price of an unrestricted, refundable, economy class seat on a given flight. Dr. Beyer posits that as the Y-fare fluctuates, the other fares react in a similar fashion. In addition, Plaintiffs highlight Northwest's admitted reliance on prospective yields in the determination of fare pricing, and Plaintiffs contend that Dr. Beyer's methodology utilizes such information to implement a common method of proof.

According to Dr. Beyer, *individual* damages may be calculated by "multiplying the percentage overcharge" (i.e. the extent to which prices were raised by the reduction of competition resulting from Northwest's acquisition of Republic) by the dollar amount of the class member's purchases from Northwest during the class period. The percentage overcharge is calculated by looking to benchmark situations in which fares were unaffected by anti-competitive conduct, and making necessary adjustments to ensure that prices in the relevant markets can appropriately be compared with fares from the benchmark. Dr. Beyer identifies three benchmarks often used by economists that can be used in calculating the percentage overcharge: (1) the comparison of prices during the period in which the effects of the anti-competitive conduct occur with prices either before or after the period; (2) the price of airline services to and from one or more other major cities where two or more airlines have a significant presence; and (3) the average price for airline services across one or more groups of other major cities where two or more airlines have a significant presence.

Under Rules 702 and 704 and the standards set forth in *Daubert* and *Kumho Tire,* the Court finds that Dr. Beyer's report is admissible. Dr. Beyer possesses extensive

education and experience in the field of economics. Moreover, his proposed methodology, namely regression analysis, and antitrust principles are widely recognized within the field of economics and have been accepted by courts. *See, e.g., In re Flat Glass Antitrust Litig.,* 191 F.R.D. 472 (W.D.Pa.1999) (finding Beyer's use of regression analysis to be acceptable methodology at class certification stage); *In re Potash,* 159 F.R.D. at 697–98 (describing expert's methodology of computing overcharge and plaintiff impact that parallels regression analysis and methodology proposed by Beyer); *In re Domestic Air Transp. Antitrust Litigation,* 137 F.R.D. 677 (N.D.Ga.1991) (admitting Beyer's testimony regarding class impact of multiple airline price-fixing scheme).

In part, Northwest opposes Dr. Beyer's report because it deems his methods unreliable and argues that proof of damage to each class member would be so individualized that common questions of fact, i.e. damages, could not possibly predominate. Through its expert, Dr. Almarin Philips, Northwest challenges Dr. Beyer's theory because it has not held true with respect to certain fares and because he has considered only a limited data source. These challenges are insufficient to render his testimony inadmissible at this stage. It would be unreasonable for the Court or a party to expect that a theory must hold true for each and every piece of data to which it is applied. Rather, the soundness of a methodology and its application must be evaluated on the whole. To date, Dr. Beyer's analysis has been limited by the availability of fare information, having access only to data available through public databases, i.e. published fares. However, as merits discovery unfolds and more complete data is shared, he will be able to fully apply his methodology. *See, e.g., In re Polypropylene Carpet Antitrust Litig.,* 996 F.Supp. 18, 27 (N.D.Ga.1997) (noting that data regarding common impact is not fully developed at class certification stage).

Northwest also challenges Dr. Beyer's analysis for the alleged disregard of substructure published fares and unpublished fares, and posits that, if considered, they would demonstrate the lack of a stable fare structure. Northwest uses the term "substructure published fares" to refer to fares such as temporary discounts offered in response to a competing airline or for a holiday sale. Included in the term "unpublished fares" are the redemption of coupons and frequent flyer miles, "Cybersaver" fares, and heavily discounted fares sold through distributors such as *Priceline.com.* The Court, however, is persuaded by Plaintiffs and Dr. Beyer's counterargument that even these fares are affected by the alleged anti-competition because they are determined or negotiated from the higher base price set in the published fare structure. *See In re Potash,* 159 F.R.D. at 696 (noting significance of uniform pricing scheme that "serves as a common starting point for negotiation of the eventual transaction price").

In addition, Dr. Phillips contends that Dr. Beyer's methodology fails to evaluate fares for each individual market on, at least, a quarterly basis. While Dr. Philips maintains that such analysis is the proper approach, he also cautions that its implementation would result in a series of extensive and varied analyses rather than a common approach as required for a class action suit.[2] Ultimately, Northwest argues that there is no common method of proof that it has improperly gained or maintained market power in each and every of the relevant markets irrespective of the alleged market power at the MSP hub. This argument does not enlighten the Court as to whether Dr. Beyer's report should be admitted, but instead impacts the Court's determination of what weight to assign to Dr. Beyer's report when considering whether to grant class certification. It may be that Dr. Beyer's report and testimony are ultimately unpersuasive; however, Defendant's intense scrutiny of the results of Dr.

**2.** Dr. Phillips further posits that an appropriate analysis would require a route-by-route analysis given that some city pairs involve multiple airport alternatives making the method of proof even more specialized. For example, the MSP–Washington, D.C. city-pair incorporates three airports to or from which passengers can fly in addition to MSP, i.e. Reagan National Airport in Washington, D.C., Dulles International Airport in Reston, Virginia, or Baltimore–Washington International Airport in Maryland.

Beyer's analysis is inappropriate at this time. For the reasons stated above, the Court declines to strike Dr. Beyer's report with respect to class-wide impact.

### c. *Plaintiffs' Motion to Strike the Affidavit of Mary Kay Kane*

■ As evidence to dispute the manageability of the current lawsuit, and thus the satisfaction of the "superiority" requirement of Rule 23, Defendant Northwest has offered the expert affidavit of Mary Kay Kane, Dean and Professor at the Hastings College of Law in San Francisco, California. Dean Kane's affidavit cautions the Court that the volume and complexity of the evidence will defeat manageability and will create a strong likelihood of confusing the jury. Plaintiffs move the Court to strike Dean Kane's affidavit. The Court declines to do so.

Dean Kane is a professor of civil procedure with a special focus on class actions. While she has never engaged in the traditional practice of law, she has authored and co-authored numerous articles and books in her field including a hornbook and a treatise. *See* J. Friedenthal, M. Kane & A. Miller, *Hornbook on Civil Procedure* (3rd ed.1999); and C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*. In addition, she was appointed to the 1990 U.S. Judicial Conference's Ad Hoc Committee on Asbestos Litigation and the 9th Circuit's Judicial Conference Session on "Managing Complex Litigation."

Plaintiffs contest Dean Kane's affidavit on four grounds. First, they argue that the affidavit provides a legal opinion and is therefore neither helpful nor appropriate expert testimony. Second, they allege that Northwest has submitted Dean Kane's affidavit as a means of bypassing the local rule restriction on the length and number of legal memoranda, the limits of which Defendant has already reached. *See* D. Minn. R. 7.1. Third, Plaintiffs oppose the affidavit because of Dean Kane's purported attorney-client relationship with Northwest. Finally, Plaintiffs assert that Dean Kane is unqualified as an expert because she has never litigated a class action nor engaged in the traditional practice of law.

Plaintiffs' claims that Kane's affidavit constitutes an inadmissible legal opinion and therefore violates the Local Rules regarding limits on legal memoranda are also without merit. Taken to the extreme, Plaintiffs' theory would argue against testimony by any attorney or legal scholar on legal issues. Moreover, it is not clear that Kane's affidavit is pure legal opinion. More accurately, Kane is discussing the facts of the current case and applying the law. If the affidavit required characterization, it would be better called an opinion of mixed law and fact. Nonetheless, the Court is not persuaded by Plaintiffs' challenge and finds Dean Kane's affidavit appropriately filed as an expert opinion.

Dean Kane's admission that she is an attorney for Northwest is troubling, but insufficient to deem her affidavit inadmissible. Plaintiffs base their challenge on Dean Kane's affirmative answer to the deposition question: "But, you consider Northwest Airlines to be your client in terms of an attorney/client relationship?" It is quite possible, given that she has never practiced, that Dean Kane did not quickly grasp the import of the questioning during her deposition. More importantly, there is no evidence before the Court to indicate that Dean Kane has any ongoing relationship with Northwest other than as an expert on class action management. The legitimacy of Plaintiffs' concerns are better measured by the degree to which the Court is persuaded by Dean Kane's affidavit rather than its admissibility.

Finally, Plaintiffs' objection that Dean Kane is unqualified as an expert simply because she lacks practical experience is misplaced. Rule 702 is clear that a background in just one of the five areas of qualification—"knowledge, skill, experience, training, or education"—can be sufficient to qualify an expert. "[M]ost experts will have some background in several bases. In that case a court may consider the totality of a witness' background when evaluating the witness' qualifications as an expert." Wright & Miller, Vol. 29, § 6265. As Northwest argues, Dean Kane certainly appears to possess some, if not all, of the five areas other than practical experience. It is true that even with such qualifications, the court is not bound to admit

Dean Kane as an expert. Nonetheless, the Court finds that the totality of Dean Kane's knowledge, education, and training qualify her as an expert in the matter of class actions. While her lack of practical experience does not preclude admissibility, it could affect the weight of her testimony. For the reasons stated above, the Court declines to strike Dean Kane's affidavit.

## 2. Class Certification

### a. *Rule 23(a) Requirements*

In determining the propriety of class action certification, the question is not whether the plaintiffs have stated a cause of action or will ultimately prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Rule 23(a) of the Federal Rules of Civil Procedure sets forth the threshold requirements for certification of a class. Class certification is appropriate when:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. Pro. 23(a).

### i. Rule 23(a)(1): Numerosity

■ In order to maintain a class action, a plaintiff must establish that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1). Plaintiffs' proposed class of hundreds of thousands, if not millions, of people who have flown in and out of MSP on Northwest since June 16, 1993, clearly establishes that joinder would be "impracticable." There is some dispute between the parties as to how class members will be identified given that the passenger and the purchaser of a ticket are not always the same person. The Court finds, however, that this complexity impacts the method of notice rather than the issue of whether certification should be granted. Thus, Plaintiffs have satisfied the numerosity requirement.

### ii. Rule 23(a)(2): Commonality

■ The second requirement for class certification is that plaintiffs must establish that "questions of law or fact are common to the class." Fed. R. Civ. Pro. 23(a)(2). It is not necessary for all questions of law or fact to be common to the class. *Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 575 (D.Minn.1995). Rather, "[t]he requirement is met if the questions linking the class members are 'substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *In re Workers' Compensation*, 130 F.R.D. 99, 104 (D.Minn.1990) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir.1982)). Moreover, commonality may be established "if common questions of liability are present despite individual differences in damages." *Id.* (citing *Jenson v. Continental Financial Corp.*, 404 F.Supp. 806, 810 (D.Minn.1975)).

The parties agree that the common issues to be resolved by this lawsuit are as follows: (1) whether "relevant markets" have been appropriately identified by the Plaintiffs, (2) whether the merger caused a substantial lessening of competition within the relevant markets, (3) whether class members suffered antitrust injury, (4) whether damages can be calculated by a common method, and (5) whether injunctive relief is necessary and appropriate. Defendant's challenges to commonality are directed at Plaintiffs' satisfaction of Rule 23(b)(3)'s requirement that such common questions predominate rather than whether they exist at all. Thus, the Court finds that Plaintiffs' have successfully established commonality for purposes of satisfying Rule 23(a)(2).

### iii. Rule 23(a)(3): Typicality

■ Rule 23(a)(3) requires that Plaintiffs establish that the claims or defenses of the representative parties are "typical of the claims or defenses of the class." Typicality requires that "the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members." *Id.* at 105 (citations omitted). Each of the class members has purchased an airline ticket from Northwest

during the class period. Clearly, each member may not have sustained equal damage, having paid different prices at different times. Nonetheless, Plaintiffs contend and the Court is persuaded that the alleged damages have been uniformly sustained by the named Plaintiffs and the remainder of the class because of the same merger and anti-competitive conduct of Northwest. Thus, the Court concludes that Plaintiffs have sufficiently satisfied the typicality requirement.

### iv. Rule 23(a)(4): Adequacy

■ Rule 23(a)(4) requires that plaintiffs establish that the "representative parties will fairly and adequately protect the interests of the class." The standard for meeting the adequacy requirement is: (1) whether the representatives and their attorneys are able and willing to prosecute the action competently and vigorously, and (2) whether each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge. *In re Potash*, 159 F.R.D. at 692. Each of the named plaintiffs has flown with Northwest numerous times on various city-pair routes during the class period. In combination, the named plaintiffs have flown on most of the city-pair routes comprising the relevant markets. Given their broad representative status and the lack of evidence before the Court that there exists any conflict of potential for future conflict between the named plaintiffs and the remainder of the class, the Court finds that the Plaintiffs have sufficiently established adequacy. Moreover, it is clear to the Court that both parties are well-represented by experienced and competent counsel.

### b. *Rule 23(b) Requirements*

In addition to the threshold requirements of Rule 23(a), a class action is only appropriate if one of the circumstances set forth in Rule 23(b) is also present. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Under Rule 23(b)(2), the Court is required to find that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Civil rights cases involving discrimination against a particular class provide illustration of the appropriate application of Rule 23(b)(2). *Amchem*, 521 U.S. at 614, 117 S.Ct. 2231. However, the application of this provision is by no means limited to the civil rights context. *Id.*

Rule 23(b)(3) requires the Court to find: (1) "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members ..." and (2) that the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615, 117 S.Ct. 2231. Class actions certified under this provision involve claims for damages and the opportunity for class members to opt out of being bound by the ultimate judgment. *Amchem*, 521 U.S. at 614–15, 117 S.Ct. 2231.

The Plaintiffs request that the Court certify the class as a hybrid action under Rules 23(b)(2) and 23(b)(3). A hybrid class consists of two stages: (1) the Court resolves the issue of liability under the procedures of 23(b)(2), and (2) the issue of damages is resolved using the "opt-out" procedures under Rule 23(b)(3). *Shores v. Publix Super Markets, Inc.*, 1996 WL 407850 *9 (M.D.Fla. Mar. 12, 1996). Thus, class members would not be able to "opt out" of the liability stage in order to pursue their own remedies, but if and when liability is established, class members could then "opt out" of the adjudication of damages. *Id.*

### i. Rule 23(b)(2)

■ The Court declines to issue class certification under Rule 23(b)(2). Plaintiffs' motion to do so appears to be based on their vague and blanket request for injunctive relief and the fact that the Court recently certified a hybrid class in another case. The Court has been provided no explanation of the injunctive relief sought by Plaintiffs. Rather, Plaintiffs have simply stated that they seek injunctive relief that would prevent Northwest "from further exercising the mo-

nopoly power it gained by acquiring Republic." Based on the record before it, the Court is in no position to discern what injunctive relief would be justified and appropriate. To the extent that Plaintiffs contend that the requested injunctive relief is a declaration by the Court that Northwest's relevant conduct is in violation of the Clayton Act, then the Court deems such relief to be insufficient for Rule 23(b)(2) certification. Ultimately, such relief would simply provide the foundation for a damage award and would nearly eviscerate the distinction between 23(b)(2) and 23(b)(3) qualification. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1775 (2d Ed.1986) (stating that declaration that certain conduct constitutes breach of conduct provides basis for damage award rather than injunctive relief).

Moreover, Plaintiffs have not explained the uniqueness of the current case to justify the certification of a hybrid class. In the recent case *Beckmann v. CBS, Inc.*, 192 F.R.D. 608 (2000), this Court granted hybrid certification primarily because of the unique circumstances of civil rights/discrimination cases which serve to satisfy the requirement that both the alleged violations and the requested relief be generally applicable to the class. While 23(b)(2) certification is certainly not limited to civil rights cases, Plaintiffs have not demonstrated for the Court why such certification should be extended to the instant case. *Amchem*, 521 U.S. at 614, 117 S.Ct. 2231. Thus, the Court declines to grant class certification under 23(b)(2).

### ii. Rule 23(b)(3):

Plaintiffs, however, have also requested that the Court grant certification under Rule 23(b)(3). Northwest's prime opposition to class certification is postured against Plaintiffs' establishment of predominance and superiority under Rule 23(b)(3). In order to satisfy the predominance requirement of Rule 23(b)(3), a plaintiff must show, in addition to seeking damages, that "there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Potash*, 159

F.R.D. at 693 (citing *In re Workers' Comp.*, 130 F.R.D. at 108). "The mere existence of individual questions such as damages does not automatically preclude satisfaction of the predominance requirement." *In re Workers' Comp.*, 130 F.R.D. at 108.

The current Plaintiffs must prove: (1) that Northwest violated the antitrust laws; (2) that Northwest's violation caused antitrust injury; and (3) that the extent of Plaintiffs' injuries can be quantified. *Id.* The parties agree that the questions of *law*, with respect to these three elements, are common to the class, and thus predominate. To the contrary, Northwest contends that the issues of *fact*, with respect to these three elements, require such individualized proof that predominance is defeated. The Court disagrees. While Defendant's argument is superficially successful at deconstructing Plaintiffs' proposed method of proof so as to make it appear uniquely complex and incapable of common proof, it is ultimately an exaggeration and insufficient to defeat Plaintiffs' claim of predominance. The Court's reasoning below is further illustrated by its earlier discussion with respect to Defendant's motion to strike Dr. Beyer's report.

The questions of fact relating to Northwest's violation of antitrust law are common to the class. Such questions relate to Northwest's conduct surrounding the merger and the alleged decrease in competition and increase in fares. In addition, Plaintiffs propose that class-wide impact or antitrust injury will be established through the use of economic principles, corroborating private and governmental reports, and Dr. Beyer's determination of a relatively stable Northwest fare structure. The combination of evidence will be used once by Plaintiffs to prove impact to the entire class.

Northwest contends that: (1) "[P]laintiffs will be unable to prove a substantial lessening of competition in their proposed relevant markets on a class-wide basis," and (2) Plaintiffs will be unable to prove that each class member suffered injury in fact without "highly individualized analysis." With respect to establishing a "substantial lessening of competition," Northwest argues that Plaintiffs will have to provide individualized

market-for-market proof with respect to: (1) the existence of each relevant market; (2) Northwest's market power within each relevant market; and (3) barriers to entry for each relevant market. Northwest attempts to bolster this argument by alleging an irreconcilable distinction between the instant case as it involves anti-competition and the related case law involving tying and price-fixing violations. It argues that because this case does not involve the proof of a singular conspiracy, then it could not possibly entail a common method of proof. The Court and both parties acknowledge that the alleged impact of this dispute is widespread and thus requires extensive evaluation and statistical analysis. The complexity of the proposed proof, however, does not distract the Court from recognizing, as Plaintiffs have argued, that such evaluation and analysis will be done once for the benefit of the class and not repeatedly for each individual member.

With respect to determining actual injury to each class member, it is inevitable that individualized proof will be presented. Such proof, however, will only be relevant with respect to the calculation of damages. *See In re Workers' Comp.*, 130 F.R.D. at 110 ("Individual questions of damages are often a problem encountered in an antitrust action and are rarely a barrier to certification."). Moreover, the fact that some members of the class may not have suffered actual injury is not fatal to class certification; and thus, a determination of actual individual injury is not necessary at this time. *See In re NAS-DAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 523–24 (S.D.N.Y.1996) ("The fact that certain members of the class escaped injury altogether would not preclude certification or destroy the class' *prima facie* case of impact."). The Court will address the complexities of proving individual damages when appropriate whether through the use of a special master, subclasses, or other available means. The Court recognizes that this case is quite complex, however, it is confident that the class action mechanism is superior to any other method available and will be manageable given the availability of the aforementioned procedural tools.

Northwest's opposition to class certification attempts to inflate and exploit the size and complexity of the current dispute. Northwest has provided little argument and no data to counter the proposition that its fares have risen disproportionately higher than those charged in comparable markets around the country since the merger. Although it lists numerous ways in which customers can negotiate lower fares and asserts that the majority of its customers use such avenues to avoid paying full price, Northwest says little if anything to explain its substantially high base fares.

Northwest's arguments resonate with those made by other large and fairly complex industries combating the threat of class action litigation. Courts, however, have rejected the proposition that the purported complexity and largesse of a given industry are sufficient to preclude class certification. *See, e.g., In re Potash*, 159 F.R.D. at 690 (granting class certification despite variation in price and method of purchase amongst class members); *In re Workers' Comp.*, 130 F.R.D. at 109–10 (certifying class over defendants' claims of manageability problems and lack of standardization and complexity of calculating workers' compensation rates); *In re Commercial Tissue Products*, 183 F.R.D. 589, 595–96 (N.D.Fla.1998) (granting class certification despite elaborate system of negotiations and rebates resulting in individualized pricing). Simply because an industry involves an elaborate pricing system that results in a range of prices often individually negotiated is an insufficient reason for denying class certification. It may be that Dr. Beyer's proposed theory and Plaintiffs' overall method of proof are ultimately unsuccessful at establishing class-wide or individual impact, however, the Court has been presented with sufficient evidence that such methods are plausible. Thus, the Court finds that class certification under Rule 23(b)(3) is appropriate.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion to Strike the Affidavit of Mary Kay Kane (Doc. No. 173) is **DENIED;**

2. Defendant's Motion to Strike a Portion of the Expert Report of Dr. John C. Beyer (Doc. No. 180) is **DENIED**;

3. Plaintiffs' Motion for Class Certification (Doc. No. 162) is **GRANTED IN PART**;

4. The following class is certified under Fed.R.Civ.P. 23(b)(3):

All persons who purchased tickets for scheduled passenger air service from Defendant Northwest Airlines, Inc., which involved travel within the Relevant Markets during the period from June 16, 1993, to the present date. Excluded from the class are defendant Northwest Airlines, Inc., its parents, subsidiaries, and affiliates, and their employees and immediate family members.

5. In accordance with Fed.R.Civ.P. 23(c)(1), this Order is conditional and may be altered or amended by the Court prior to the decision on the merits.