Frederick L. SAMPLE, et al., Plaintiffs,

v.

MONSANTO CO., et al., Defendants.

No. 4:01CV65RWS.

United States District Court,
E.D. Missouri,
Eastern Division.

Sept. 30, 2003.

Ann D. White, Mager and White, P.C., Jenkintown, PA, John W. Barrett, Richard R. Barrett, Barrett Law Office, Lexington, MS, John Randall Patchett, Patchett Law Office, Marion, IL, Michael Straus, Straus and Boies, L.L.P., Birmingham, AL, Thomas F. Crosby, Winters and Brewster, Marion, IL, W. Gordon Ball, Knoxville, TN, William J. Ban, Vincent Briganti, Lowey and Dannenberg, White Plains, NY, Daniel E. Gustafson, Samuel D. Heins, Heins and Mills, Minneapolis, MN, Joseph F. Devereux, Jr., Richard P. Sher, Devereux and Murphy, Melissa Price Smith, Copeland and Thompson, Clayton, MO, Manuel J. Dominguez, Robert S. Palmer, Berman and Devalerio, West Palm Beach, FL, Richard S. Lewis, Michael D. Hausfeld, Cohen and Milstein,

Washington, DC, Anthony J. Bolognese, Spector and Roseman, Philadelphia, PA, Elizabeth J. Cabraser, Michael W. Sobol, Lieff and Cabraser, San Francisco, CA, Elizabeth H. Cronise, Hector D. Geribon, Lieff, Cabraser, Heimann, New York City, Irwin Levin, Cohen and Malad, Indianapolis, IN, Linda P. Nussbaum, Cohen and Milstein, Robert N. Kaplan, Kaplan and Kilsheimer, New York City, for plaintiffs.

Cameron Cohick, Dean Jablonski, Donna M. Donlon, Philip D. Bartz, Stephen M. Lastelic, McKenna and Long, Washington, DC, James B. Bleyer, Bleyer and Bleyer, Marion, IL, Phillip A. Bradley, McKenna and Long, Atlanta, GA, Shannon M. Blankinship, Stephen J. O'Brien, Stephen H. Rovak, Sonnenschein and Nath, LLP, Andrew Rothschild, C. David Goerisch, Duane L. Coleman, Lewis and Rice, St. Louis, MO, Guy C. Quinlan, Ignatius Grande, Joseph Floriani, Kathryn McCarthy, Keila D. Ravelo, Michael C. Naughton, Sean M. Murphy, Wesley R. Powell, Clifford Chance US L.L.P., New York City, James C. Egan, Jr., Clifford Chance US L.L.P., Washington, DC, Daniel C. Nelson, Glenn E. Davis, Armstrong Teasdale, LLP, St. Louis, MO, Jack E. Pace, III, Michael Gallagher, Robert A. Milne, Vincent R. FitzPatrick, Jr., White and Case, New York City, Jacob E. Tyler, Dewey Ballantine, LLP, New York City, Bradley C. Morris, K. Matthew Miller, Timothy G. Barber, Womble and Carlyle, Charlotte, NC, Lisa A. Pake, Haar and Woods, LLP, St. Louis, MO, for defendants.

## MEMORANDUM AND ORDER

SIPPEL, District Judge.

This matter is before the Court on plaintiffs' motion for class certification. Because I granted summary judgment on the tort claims, only the antitrust claims are before me in this case. Following extensive briefing and a two-day hearing held on April 28–29, 2003, I must deny plaintiffs' motion for class certification. My analysis follows.

### Introduction

In this putative class action, corn and soybean farmers claim that defendants Monsanto, Pioneer and Syngenta conspired to fix, raise, maintain, or stabilize prices on genetically modified (GM) Roundup Ready soybean seeds and Yieldgard corn seeds in violation of the Sherman Act, 15 U.S.C. § 1. According to the complaint, they did so by agreeing to impose a surcharge or "premium" on all purchases of Roundup Ready soybean seeds and Yieldgard corn seeds.

Plaintiffs also claim that, in furtherance of this conspiracy, Monsanto entered into an agreement with defendant Aventis to restrict the output of its Liberty Link soybean seeds, another type of herbicide-resistant soybean seed that would have competed with Roundup Ready soybeans. Plaintiffs allege that this second conspiracy was necessary to prevent the first one from being undermined.

### The Proposed Classes

Plaintiffs seek to certify two antitrust classes. Based on the antitrust claims set forth in Counts I through IV of the First Amended Complaint, plaintiffs seek to certify the following class:

*Class One: The Roundup Ready Soybean Seed Farmer Antitrust Class*

All persons and entities (excluding Defendants and their co-conspirators, their officers, directors, and employees, and government entities) who purchased Roundup Ready soybean seeds in the United States, at any time from January 1, 1996 to the present. For purposes of this class definition, the term "Roundup Ready soybean seeds" means the seeds and permission to grow those seeds. This class includes only farmers, who purchased Roundup Ready soybean seeds (other than as distributors) or the right to grow the seeds, *directly* from one of the defendants.

Based on the antitrust claims set forth in Counts V and VI of the First Amended Complaint, plaintiffs seek to certify the following class:

*Class Two: The Yieldgard Corn Seed Farmer Antitrust Class*

All persons and entities (excluding Defendants and their co-conspirators, their offi-

cers, directors, and employees, and government entities) who purchased Roundup Ready soybean seeds in the United States, at any time from January 1, 1996 to the present. For purposes of this class definition, the term "Yieldgard corn seeds" means the seeds and permission to grow those seeds. This class includes only farmers, who purchased Yieldgard corn seeds (other than as distributors) or the right to grow the seeds, *directly* from one of the defendants.

I will refer to these proposed classes jointly as the antitrust classes.

### *Class Action Standard*

■■■ Federal Rule of Civil Procedure 23(a) allows one or more individuals to sue as representative parties on behalf of a class "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *see also Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1539 (8th Cir.1996); *Morgan v. United Parcel Service of America, Inc.*, 169 F.R.D. 349, 354 (E.D.Mo.1996). Plaintiffs have the burden to establish each of the four prerequisites: numerosity, commonality, typicality and adequacy of representation. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Rule 23(a) requirements must also be met with respect to each subclass. *Roby v. St. Louis Southwestern Railway Co.*, 775 F.2d 959, 961 (8th Cir.1985).

■■■ The court must engage in a "rigorous analysis" to determine whether all the prerequisites of Rule 23(a) are satisfied. *Falcon*, 457 U.S. at 161, 102 S.Ct. 2364. "To determine whether the requirements of Rule 23(a) have been satisfied, the court must examine the factual basis for the plaintiff's claims and may examine not only the pleadings but also the evidentiary record, including any affidavits and results of discovery." *Sanft v. Winnebago Indust., Inc.*, 214 F.R.D. 514, 519 (N.D.Iowa 2003) (citing *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 165 (3rd Cir.2001)). The court should not, however, decide the merits of the case. *See In re Buspirone Patent Litigation*, 210 F.R.D. 43, 56–57 (S.D.N.Y.2002). In *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir.2001), the Seventh Circuit Court of Appeals chastised the district court for accepting the allegations of the complaint as true when deciding whether to certify a class:

> The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it. The reason why judges accept a complaint's factual allegations when ruling on motions to dismiss under Rule 12(b)(6) is that a motion to dismiss tests the legal sufficiency of a pleading. Its *factual* sufficiency will be tested later—by a motion for summary judgment under Rule 56, and if necessary by trial. By contrast, an order certifying a class usually is the district judge's last word on the subject; there is no later test of the decision's factual premises (and, if the case is settled, there could not be such an examination even if the district judge viewed the certification as provisional). Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23. This would be plain enough if, for example, the plaintiff alleged that the class had 10,000 members, making it too numerous to allow joinder, see Rule 23(a)(1), while the defendant insisted that the class contained only 10 members. A judge would not and could not accept the plaintiff's assertion as conclusive; instead the judge would receive evidence (if only by affidavit) and resolve the disputes before deciding whether to certify the class.

*Id.* at 675–76 (emphasis in original). The Eighth Circuit Court of Appeals has yet to

address this issue. Like the *Winnebago* court, I find the reasoning of the Seventh Circuit to be persuasive and will adopt it in this case.

■ In addition to satisfying all the prerequisites of Rule 23(a), the proposed class must fall within one of the subcategories of Rule 23(b). *Morgan*, 169 F.R.D. at 354. Plaintiffs seek to certify the antitrust classes under Rule 23(b)(3), which permits certification if plaintiffs demonstrate that: 1) common questions predominate over any questions affecting only individual members; and 2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The Court has broad discretion to determine whether an action may be maintained as a class action. *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir.1980).

### *Discussion*

#### *Rule 23(a): Numerosity*

A class may not be certified unless the proposed class is so large that joinder of all class members would be "impracticable." Fed.R.Civ.P. 23(a)(1). Plaintiffs aver that the proposed classes include "hundreds of thousands of farmers located in various states around the nation. Joinder of all these plaintiffs is not practicable." Defendants do not dispute that plaintiffs meet the numerosity requirement, and I find that plaintiffs have satisfied this requirement with respect to the antitrust classes.

#### *Commonality*

Rule 23(a)(2) requires the presence of questions of law or fact common to the class. However, the presence of differing legal inquiries and factual discrepancies will not preclude class certification.[1] "Common questions are often found in antitrust price-fixing conspiracy cases, because by their nature,

these cases deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Monosodium Glutamate Antitrust Litigation*, 205 F.R.D. 229, 232 (D.Minn.2001) (internal citations and quotation marks omitted).

In this case, Plaintiffs allege that the common issues of law and fact in this case are whether:

1. defendants conspired to fix, raise, stabilize, or maintain Yieldgard corn seed prices;

2. defendants conspired to fix, raise, stabilize, or maintain Roundup Ready soybean seed prices;

3. defendants conspired to monopolize the herbicide resistant soybean seed market;

4. Monsanto monopolized the herbicide resistant soybean seed market;

5. any or all of the conduct alleged in the Complaint violates the Sherman Act;

6. defendants' conduct had an impact on the class members; and

7. the class-wide damages are attributable to the Defendants' conduct.

Defendants do not dispute that the commonality requirement is met under Rule 23(a)(3), and I find that there are legal issues common to the class.

#### *Adequacy of Representation*

■ Rule 23(a)(4) requires that the named plaintiff must fairly and adequately protect the interests of class members. To meet this requirement, the named plaintiff must be a member of the class she seeks to represent. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Roby*, 775 F.2d at 961; *Tuft v. McDonnell Douglas Corp.*, 581 F.2d 1304, 1307–08 (8th Cir.1978). In addition, the class representative must

---

1. The commonality inquiry under Rule 23(a) is different from the question under Rule 23(b)     whether common questions predominate.

possess the same interest and suffer the same injury as the class members. *Rodriguez*, 431 U.S. at 403, 97 S.Ct. 1891. The adequacy rule also applies to lawyers seeking to represent the class. *See Bradford v. AGCO Corp.*, 187 F.R.D. 600, 605 (W.D.Mo. 1999).

Because I denied summary judgment on plaintiff C–K Farms' claims, I am rejecting defendants' argument that C–K Farms cannot adequately represent the antitrust classes.

Defendants also contend that plaintiffs' counsel cannot adequately represent the antitrust classes because of a conflict of interest. Essentially, defendants argue that plaintiffs' counsel has labored under a conflict of interest by representing the antitrust plaintiffs and the tort plaintiffs because the classes sought contradictory relief. In particular, the tort plaintiffs alleged "contamination" by the same seeds that the antitrust farmers currently grow and, through this lawsuit, seek to grow at a cheaper price. Plaintiffs' tort claims also requested injunctive relief to prevent the sale and distribution of genetically modified seed without adequate testing and safeguards. The antitrust plaintiffs, however, want to continue to purchase the GM-seed, and presumably, more of it at a cheaper price.

Plaintiffs' lawyers responded to the allegations about their inadequacy to serve as class counsel by seeking to withdraw as counsel for the tort plaintiffs.[2] I denied as moot the motion to withdraw and corresponding motion to substitute new counsel when I granted summary judgment against Sample and Naylor, the sole named class representatives for the tort claims. However, I have considered all arguments made in support or opposition to these motions as they relate to the adequacy of counsel issue.

■ This is admittedly a close call. I do not believe the issue of whether counsel can

adequately represent the antitrust classes is mooted by the fact that the tort claims are no longer at issue in this case. This case has been pending in this district since 2001 after being transferred from another district court. If the conflicting nature of the relief sought by the proposed classes impeded the ability of counsel to adequately represent their clients' interests, it did so long before I granted summary judgment. On the face of the plaintiffs' complaint, the relief sought by the proposed classes seems incongruous at best and irreconcilable at worst. Strategic decisions made by counsel throughout the course of these proceedings were undoubtedly influenced by the nature of the relief sought by their clients, and defendants have raised legitimate concerns about counsel's ability to zealously prosecute the claims of both classes in this lawsuit. Nevertheless, having carefully considered this issue in light of the full record before me, I find that plaintiffs' counsel can adequately represent the proposed antitrust classes.

Plaintiffs have established the necessary prerequisites for maintaining a class action under Rule 23(a). However, I must deny class certification for failure to meet the requirements of Rule 23(b)(3).

### Rule 23(b)(3): Predominance

Plaintiffs must meet all the requirements of Rule 23(a) and fall within one of the categories of Rule 23(b) to certify their antitrust claims as a class action. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). As stated above, plaintiffs seek to certify their antitrust classes under Rule 23(b)(3), the so-called "common question" or "damages" class action. To certify a class action under Rule 23(b)(3), the Court must find that: 1) common questions predominate over any questions affecting only individual members; and 2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P.

---

**2.** Counsel also opposed the assertion on the merits and filed waivers of conflicts of interest signed by plaintiffs Sample and Naylor.

23(b)(3); *Amchem*, 521 U.S. at 615, 117 S.Ct. 2231. Because plaintiffs cannot meet the predominance requirement, I am not authorized to certify the proposed classes.

■■■ In seeking class certification, plaintiffs have the burden of demonstrating that, as required by Rule 23(b)(3), "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." This necessarily requires an examination of the underlying elements necessary to establish liability for plaintiffs' claims. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir.2001). A plaintiff seeking treble damages under of § 4 of the Clayton Act, 15 U.S.C. § 15, must establish an antitrust violation (here, the alleged conspiracy to fix prices) and the fact of damage or injury, i.e., impact. *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Cir.1992); *In re MSG*, 205 F.R.D. at 232. Thus, to satisfy the "predominance" standard, plaintiffs must show that both conspiracy and impact can be proven on a systematic, class-wide basis. Plaintiffs cannot satisfy either of those prongs.

*Plaintiffs have not Demonstrated that Antitrust Impact can be Measured on a Class–Wide Basis with Common Proof*

■■■ To establish cognizable injury under Section 4 of the Clayton Act, plaintiffs must prove that the class members suffered injury to their "business or property," i.e., impact, as a result of the violation. *See State of Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 317 (5th Cir.1978); *Midwestern Machinery v. Northwest Airlines, Inc.*, 211 F.R.D. 562, 571 (D.Minn.2001). The importance of the impact requirement cannot be understated, as noted by the court in *Blue Bird*:

> In making the determination as to predominance, of utmost importance is whether impact should be considered an issue common to the class and subject to generalized proof, or whether it is instead an issue unique to each class member, and thus the type of question [that] might defeat the predominance requirement of Rule 23(b)(3).

573 F.2d at 320. "[P]roof of injury in a price-fixing case will generally consist of some showing by the plaintiff that, as a result of this conspiracy, he had to pay supracompetitive prices ...." *Id.* at 327. To establish antitrust impact, an expert is "required to construct a hypothetical market, a but-for market, free of the restraints and conduct alleged to be anticompetitive." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055 (8th Cir.2000) (internal quotation marks omitted).

■■■ To meet their burden of proof, plaintiffs offered up expert testimony from Dr. Leitzinger. Defendants have asked me to apply the test of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and to disregard his testimony. I will deny defendants' motion in *limine* as I believe it is appropriate for me to consider all evidence at this stage of the proceedings. I have considered all expert testimony offered by both sides in support of or in opposition to class certification and have afforded that testimony such weight as I deemed appropriate. However, Dr. Leitzinger's testimony does *not* show that impact can be demonstrated on a class-wide basis.

Simply put, plaintiffs *presume* class-wide impact without any consideration of whether the markets or the alleged conspiracy at issue here actually operated in such a manner so as to justify that presumption. Dr. Leitzinger *assumes* the answer to this critical issue and plaintiffs, in turn, have asked the Court to rely on this *conclusion* as support for class certification. I cannot "presume" or "assume"—much less "conclude"—class-wide impact here because the evidence submitted during the class certification hearing demonstrates that such a presumption would be improper.

First, the genetically modified seeds are not homogenous products. The market for seeds is highly individualized depending upon

geographic location, growing conditions, consumer preference and other factors.

Second, plaintiffs allege that only the "premium" portion of the seed product is the result of the price-fixing scheme, but the germplasm component of the seed cannot be segregated from the rest of the seed. The evidence demonstrated that defendants and their distributors often lowered the "overall" price of certain seeds, or gave discounts or rebates to certain farmers to offset any alleged premium, and that some farmers in fact paid no premium.

Another reason that the actual prices paid by farmers cannot be determined with common proof is that the GM seeds were not offered for sale at a uniform price. Plaintiffs suggested that defendants' nationwide price lists could be used for this purpose, but the evidence offered during the certification hearing demonstrated that these lists did not reflect the actual price paid by farmers. Plaintiffs also suggested that this issue could be resolved through a "claims procedure" that would be implemented after the class certification process. This argument is meritless. The amount of premiums paid, if any, is relevant to a determination of impact, an essential element of a price-fixing claim, and is not merely an assessment of the amount of damages, which may be properly ascertained at a later time. It is clear that this determination cannot be made on a class-wide basis, but would involve a fact-intensive inquiry unique to each potential class member.

Dr. Leitzinger attempted to measure the premium by comparing the price of GM seeds to conventional seeds, but in many instances the GM seeds have no conventional counterpart. Therefore, it would be impossible to determine the amount of premium

paid. In addition, Dr. Leitzinger conceded that even this calculation might not accurately affect the amount of the premium because insertion of the GM trait might affect other agronomic characteristics of the seed which might otherwise affect the price.

Plaintiffs cannot determine the "but-for" marketplace necessary to establish antitrust impact without a reliable methodology to determine the premiums paid by farmers. In fact, the evidence presented at the class certification hearing showed that supply-and-demand conditions for seed sales vary to such a great extent that the "but-for" prices could be determined only through individualized inquiries for each potential class member. These factors include growing seasons and conditions, regional varieties and farmer preferences. Common proof simply cannot be used to establish a "but-for" marketplace in this situation, particularly where the evidence showed that the actual prices paid by many farmers was well below Monsanto's technology fee.[3]

Finally, I am not persuaded that the alleged conspiracy could even be proven with common evidence. The dynamics of this localized industry make it highly unlikely that the existence and workings of the alleged conspiracy could be shown through common proof.

In sum, after carefully considering all the evidence submitted during the class certification hearing, I am convinced that the impact of defendants' alleged antitrust violations cannot be shown on a class-wide basis with common proof. Instead, it is a highly individualized, fact-intensive inquiry that necessarily requires consideration of factors unique to each potential class member. The variety of GM seeds purchased, geographic

---

**3.** Initially, plaintiffs alleged in their amended complaint that the conspiracy involved a uniform premium. However, plaintiffs and Dr. Leitzinger abandoned this theory prior to the class certification hearing, presumably because the evidence showed that such uniformity did not exist. Plaintiffs instead argued that the conspiracy was to "support" Monsanto's technology fee by charging premiums, whether uniform or varied and whatever the amount. Once again, however, this theory is flawed because it merely *assumes* class-wide impact instead of demonstrating that class-wide impact could actually be shown through the use of common proof. Dr. Leitzinger summarized his own theory with the phrase,

"A rising tide floats all boats." If I were to accept this theory, there would never be a case where a court *did not* certify an antitrust class action because: 1) plaintiffs' allegations of a conspiracy must be accepted as true; and 2) class-wide impact should always be *presumed* (even if the actual market demonstrates otherwise) because the conspiracy must have affected the class because, well, it is a conspiracy. Of course, this is not the standard to prove antitrust violations. Plaintiffs' house-of-cards theory collapses under the scrutiny of Rule 23(b)(3).

location, growing conditions and the terms of purchase are all relevant to a determination of impact and cannot be shown with common proof on a class-wide basis. Plaintiffs did not meet their burden of establishing the necessary elements of Rule 23(b)(3) through the testimony of Dr. Leitzinger, whose "assumptions," "presumptions" and "conclusions" fall far short of actually *establishing* antitrust impact on a class-wide basis through common proof.

For these reasons, I find that individualized issues predominate over common questions and preclude class certification.[4]

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for class certification on antitrust claims [# 328] is denied.

**IT IS FURTHER ORDERED** that defendants' motion in limine to exclude the opinions of Dr. Leitzinger [# 346] is denied.

**IT IS FURTHER ORDERED** that the Court will set a status conference in this matter by separate order.

---

**4.** Plaintiffs' amended complaint and motion for class certification also seek class treatment of restraint of trade and monopolization claims, but counsel did not discuss these claims at the class certification hearing or present any evidence in support of certifying classes with respect to these claims. Therefore, I am denying class certification with respect to these antitrust claims as well.